UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONYA KAY DAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 10-cv-1339 (RCL) |
| ) | |
| THE CORNÈR BANK ) | |
| (OVERSEAS) LIMITED, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

This case centers on the existence, or nonexistence, of an offshore bank account in the Caribbean. Plaintiff, a United States citizen living in Las Vegas, alleges that her mother set up an account in excess of $14 million at Cornèr Bank (Overseas) Limited ("CBL"), the Bahamian-based, wholly-owned subsidiary of the Swiss bank Cornèr Banca S.A. ("CB"), and that since her mother's death CB and CBL have conspired to wrongfully cover up the existence of any such account. Plaintiff also accuses Colyn Roberts—a CBL employee—and Graham, Thompson & Co. ("GTC")—a Bahamian law firm—of being in collusion with CBL and interfering with plaintiff's attempts to recover the account funds. For their part, defendants deny the existence of any account in plaintiff's or her mother's name and dispute any allegations of wrongdoing. Before the Court are numerous motions (1) contesting the adequacy of service, (2) requesting additional time to complete service, (3) asserting grounds for dismissal of the case, (4) seeking removal of certain allegations, and (5) asking for the imposition of sanctions under Rule 11. For the reasons set forth below, the Court finds that service has been adequately completed, that

defendants' motions for sanctions are unsupported on this record, and that the new allegations should be struck—necessitating the filing of an amended complaint, after which the Court will set an expedited schedule for briefing on the remaining issues in dispute.

## II.     BACKGROUND

Plaintiff Tonya Kay Day initiated this suit nearly one year ago by filing a complaint that details a sordid affair straight out of a Hollywood script—or at least a second-rate mystery novel. Complaint, Aug. 6, 2010 [1].  According to the Complaint, nearly five years ago plaintiff visited her mother, Lavera Jean Foelgner, who began to tell plaintiff of over $14 million she had accumulated "from participation for many years in the oil business." *Id*. at ¶¶ 12 & 15–16.[1] Plaintiff's mother spoke cryptically during this conversation, telling of a "CORNER BANK" in the Bahamas at which she deposited the funds,[2] and pointing plaintiff to a painting in the home marked on the back by a sticker with "mechanically printed" numbers purportedly representing the account number and password. *Id*. at ¶¶ 17–18.  Plaintiff alleges that Ms. Foelgner intended to give her daughter past bank statements for the account; however, only a few months after this conversation and before Ms. Foelgner was able to pass these records on to plaintiff, she was tragically and unexpectedly killed by a drunk driver. *Id*. at ¶¶ 20–21.  Over the next few years, plaintiff ran down several leads before determining that the account her mother spoke of is at CBL. *Id*. at ¶ 23.  After coming to this conclusion, plaintiff retained an attorney, who in turn reached out to GTC in the Bahamas to work on her behalf to recover the funds. *Id*. at ¶ 24. According to the Complaint, however, GTC actually represented CBL—a fact the firm withheld in order to gain access to plaintiff's "confidential information." *Id*. at ¶¶ 24–26.[3]  Shortly

---

[1] The Complaint does not specify anything further regarding the source of the alleged funds.
[2] As set forth below, *see infra*, there is a dispute as to whether plaintiff's mother actually named defendant CBL during this conversation.
[3] The Complaint does not otherwise identify what "confidential information" GTC may have procured.

thereafter, GTC withdrew from its representation of plaintiff. *Id*. at ¶ 26. Exhausted with the lack of progress, plaintiff herself traveled to the Bahamas nearly a year ago to visit CBL's offices. *Id*. at ¶ 27. Plaintiff describes her visit as follows:

> [T]he bank's office was not open to the public and the bank manager was not opening the door of the office before DAY, when she asked to enter. When DAY started oral communication with the bank's manager, subsequently identified as ROBERTS, he held the door only half-open. . . . ROBERTS said that GRAHAM THOMPSON was a reputable law firm that actually represented his bank . . . . When DAY attempted, again, to enter the bank office and to pass the documents, ROBERTS, on the contrary, attempted to shut the door close, with force, pushing her out. . . . The remainder of the conversation was essentially that ROBERTS would not cooperate and he continued pushing DAY out. . . . As a result of such an encounter, DAY suffered not only the physical inconvenience of being pushed out, but also a severe emotional distress after ROBERTS's such outrageous conduct.

*Id*. at ¶¶ 27–30. Following these events, GTC allegedly "admitted" that it represented CBL, *id*. at ¶ 32, and all defendants were thereafter unresponsive to further inquiries by plaintiff or her counsel regarding the account. *Id.* at ¶¶ 31–34. Left with—in her view—little alternative, plaintiff filed this action against defendants in August of last year, setting forth claims for Breach of Contract and Breach of Fiduciary Duty against all parties (Counts I–II), Conversion and Unjust Enrichment against CB and CBL (Counts III–IV), Civil Conspiracy against all defendants (Count VII), Battery against Mr. Roberts, CB and CBL (Count VIII), Intentional Infliction of Emotional Distress against Mr. Roberts (Count IX), and Malpractice and Misrepresentation or Fraud against GTC (Counts X–XI), while also seeking equitable relief in the form of a Declaratory Judgment and an Accounting (Counts V & VI).

### A. The Bahamian Defendants

Shortly after the Complaint was filed, plaintiff began what has been a lengthy process of serving each of the four defendants. With respect to GTC, Mr. Roberts, and CBL, plaintiff filed

3

proofs of service with the Court consisting of affidavits from a process server in the Bahamas—verified by a judicial officer—declaring that he served the initial papers upon each Bahamian defendant by hand delivery on August 23, 2010. Return of Service/Affidavit, Sep. 14, 2010 [8]; Return of Service/Affidavit, Sep. 14, 2010 [9]; Return of Service/Affidavit, Sep. 14, 2010 [10]. Twenty-one days later, as required under the Federal Rules of Civil Procedure, defendant GTC appeared and moved to dismiss the Complaint, arguing that the Court lacks jurisdiction over it, that this is an improper forum, that the Complaint fails to state a claim for relief, and that service was ineffective. Motion to Dismiss 6–24, Sep. 13, 2010 [4] ("GTC MTD"). With respect to this last objection, GTC submitted a sworn declaration from Judith Whitehead, the head of the firm, stating that the process server did not deliver a Summons but only the Complaint to GTC, Declaration of Judith Whitehead ¶ 12, Ex. 1 to GTC MTD, Sep. 13, 2010 [4-1], and argues that, absent a Summons, service was ineffective against the firm. GTC MTD at 12–16. A few weeks later, Mr. Roberts and CBL joined the proceedings—after being prompted by plaintiff's request that the Clerk enter their default[4]—and upon their arrival submitted a joint motion to dismiss that raises objections concerning jurisdiction, forum, Rule 12(b)(6), and service similar to the grounds for dismissal set forth in GTC's motion. Motion to Dismiss, 4–20, Sep. 24, 2010 [22]. CBL and Mr. Roberts also filed affidavits stating that the documents delivered by the process server in the Bahamas included only the Complaint and not a Summons. Declaration of Renee Kemp ¶¶ 10–11, Ex. 1 to Mtn. to Stay, Sep. 14, 2010 [14-1].

Having learned of potential deficiencies in her first attempt at service, plaintiff moved for a stay while she attempted to serve defendants under the Hague Convention on the Service

---

[4] Specifically, Mr. Roberts and CBL appeared and filed an emergency motion requesting a stay of default and additional time to respond. Emergency Motion to Stay re Motion for Entry of Default, Sep. 14, 2010 [14]. Pursuant to the an agreement negotiated by the parties, plaintiff subsequently withdrew her motion for default and consented to the schedule proposed in defendants' motion. Notice of Withdrawal of Motion, Sep. 17, 2010 [18]; Notice of No Opposition, Sep. 17, 2010 [19].

Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 3, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention"). Cross-Motion to Stay, Oct. 4, 2010 [26]; Cross-Motion to Stay, Oct. 8, 2010 [29] (collectively, "P's Cross-Mtns."). In support of her request, plaintiff asserts that service by the Bahamian process server was proper under Article 10(c) of the Hague Convention, P's Cross Mtns. at 6–8, but nonetheless asks the Court to grant additional time to complete service under Article 5 of the Convention, *id.* at 7–10—a process she had already set in motion at the time of her request. Along with arguments in support of her request for a stay, plaintiff's cross-motions each include a section titled "Proposed Outline of Opposition," which presents a limited and incomplete overview of plaintiff's opposition to defendants' motions to dismiss. *Id.* at 10–17. Briefing on both the motion to dismiss and the requests for a stay were subsequently completed by the end of October.

Meanwhile, plaintiff initiated contact with the Bahamas' Office of the Attorney General, which is designated the Central Authority of the Commonwealth of the Bahamas ("Central Authority") under Article 5 of the Hague Convention. In December, plaintiff filed new proofs of service indicating that Mr. Roberts, Return of Service/Affidavit, Dec. 15, 2010 [48], CBL, Return of Service/Affidavit, Dec. 15, 2010 [49], and GTC, Return of Service/Affidavit, Dec. 15, 2010 [50], had all been served through the Central Authority. According to two of the defendants, however, the process server employed by the Central Authority interchanged two of the packets containing the relevant papers and—as a result—served GTC with a Summons directed to Mr. Roberts and Mr. Roberts with a Summons directed to GTC. Declaration (Second) of Judith Whitehead Ex. B, Oct. 10, 2010 [30-4].

Apart from the continuing back-and-forth over service of process, another conflict arose between the parties concerning several allegations in the Complaint. On September 7th, shortly

5

after receiving a copy of the Complaint, GTC served upon plaintiff—but did not file with the Court—a motion for sanctions highlighting potential inconsistencies between verified statements in the Complaint and a sworn affidavit plaintiff submitted in a prior proceeding. In response, plaintiff filed a document, titled a "Notice of Correction," stating her intention "to add" additional text to the Complaint and explaining the need for these new allegations. Notice of Correction, Sep. 24, 2010 [21] ("P's Notice"). Defendants CBL and Mr. Roberts immediately moved to strike plaintiff's Notice on the ground that plaintiff ignored Rule 15 of the Federal Rules of Civil Procedure by modifying her allegations without filing an amended pleading, Motion to Strike Plaintiff's Notice of Correction, Sep. 27, 2010 [25] ("Mtn. to Strike"), while GTC—unsatisfied with plaintiff's procedural maneuvering—subsequently moved for Rule 11 sanctions against plaintiff and her counsel. Motion for Sanctions, Oct. 4, 2010 [27] ("GTC Sanctions Mtn."). Shortly thereafter, CBL and Mr. Roberts separately moved for sanctions on a different basis, arguing that certain allegations are internally inconsistent and wrongfully imply that plaintiff is the trustee and administrator for Lavera Jean Foelgner's estate—an assertion, according to defendants, that is directly at odds with records from Ms. Foelgner's estate proceedings in Kansas. Motion for Sanctions, Oct. 7, 2010 [28] ("CBL/Roberts Sanctions Mtn."). At this point, unsurprisingly, civility in these proceedings began to wane. In response to the sanctions motions, plaintiff accuses defendants of violating meet-and-confer requirements and characterizes their procedural attacks as both "extraordinary," Opposition to Motion to Strike, Oct. 11, 2010 [32] ("Mtn. to Strike Opp."), and part of an inappropriate, "shoot from the hip" litigation style. Opposition to Motion for Sanctions, Oct. 18, 2010 [35] ("GTC Sanctions Opp."); Opposition to Motion for Sanctions, Oct. 27, 2010 [40] ("CBL/Roberts Sanctions Opp."). Plaintiff also draws analogies between the Swiss bank defendants in this case and those

Swiss banks implicated by the Volcker Commission for obstructing attempts by Holocaust survivors or their heirs to retrieve money and valuables deposited in the banks prior to World War II, P's Cross-Mtns. at 3–4—despite the fact that neither CB nor CBL existed at the time. Having been provoked, GTC's counsel asserts that plaintiff filed "a clear and deliberate misrepresentation of fact that was intended to mislead," Reply in Support of Motion for Sanctions, Oct. 25, 2010 [39], while counsel for Mr. Roberts and CBL accuses plaintiff's counsel of adopting a "new and convenient characterization" of the original allegations in a post-hoc attempt "to avoid sanctions for filing the perjured statements." Reply in Support of Motion for Sanctions, Nov. 3, 2010 [42] ("CBL/Roberts Sanctions Reply").

A short time later, plaintiff further escalated the dispute by launching an assault on defendants' credibility through a motion to compel GTC's affiant, Ms. Whitehead, to appear and give testimony concerning her contention that GTC was served with a Summons addressed to Mr. Roberts. Motion for Order to Show Cause, Dec. 22, 2010 [53] ("OSC Mtn."). In her motion, plaintiff accuses GTC and Ms. Whitehead of having "engaged after-the-fact in banal dodging of service of process with improper denials, which should be held unbecoming of an attorney." *Id*. at 9. GTC fired back the very next day, charging plaintiff with "using this Court as a soapbox to make scurrilous personal attacks against the defendants." Opposition to Motion for Order to Show Cause, Dec. 23, 2010 [54]. Plaintiff, naturally, retorted that GTC is doing "nothing constructive, instead offering attacks on plaintiff's counsel and, by implication, on the Attorney General's Office of the Bahamas." Reply to Opposition to Motion for Order to Show Cause, Dec. 30, 2010 [55].

Finally, after briefing on these contentious matters was completed, plaintiff submitted two new proofs of service indicating that defendants GTC and Mr. Roberts were again served

through the Central Authority—this time by personal delivery of the Complaint *and* a properly addressed Summons—on January 20, 2011. Return of Service/Affidavit, Mar. 12, 2011 [58]; Return of Service/Affidavit, Mar. 12, 2011 [59]. A little more than a week later, GTC filed a document expressing its continuing objection to service of process in this matter. Notice of Continuing Opposition to Service, Mar. 21, 2011 [60]. Though GTC concedes that it has now received a properly addressed copy of the Complaint and Summons, it asserts that because plaintiff's Notice alters the allegations in this case, the Complaint is no longer the operative complaint and service remains defective. *Id*. at 1–2. Mr. Roberts, by contrast, filed no response to plaintiff's latest evidence establishing service of process.

### B. Cornèr Banca, S.A.

Records indicate that CB, the only defendant not located in the Bahamas, was served on November 8, 2010, through the Court of Appeals for the Canton of Tessin, which is one of the cantonal authorities designated as the Central Authorities of Switzerland under Article 5 of the Hague Convention. Return of Service/Affidavit, Nov. 30, 2010 [45]. Shortly thereafter, CB entered its timely appearance and moved to join in all bases for dismissal set forth in the motion to dismiss filed by CBL and Mr. Roberts, except for those relating to service of process. Motion to Join CBL/Roberts Motion to Dismiss, Nov. 29, 2010 [44]. Plaintiff counters with the same limited, incomplete arguments set forth in her opposition to that motion, Opposition to Motion for Joinder 4–8, Dec. 13, 2010 [47], and again invokes the specter of the Volcker Commission while accusing CB of engaging in a "scorched earth style of litigation." *Id*. at 2–3 & 8. Consistent with the heated exchanges that now pervade these proceedings, CB fires back that plaintiff is "fabricat[ing] jurisdictional foundations after the fact." Reply in Support of Motion for Joinder, Dec. 20, 2010 [52].

## III. ANALYSIS

The above summary crystallizes the complex procedural history of the case laid before this Court.[5] In light of the numerous outstanding motions and often incomplete briefs, and for the reasons set forth below, the Court today (1) grants the motion to strike plaintiff's Notice, (2) holds that all defendants have been properly served, (3) denies without prejudice GTC's Rule 11 motion, (4) denies CBL's and Mr. Roberts' motion for sanctions, and (5) denies without prejudice all defendants' motions to dismiss. The accompanying Order shall therefore direct plaintiff to properly amend her complaint and set further deadlines for the proceedings ahead.

### A. Motion to Strike

Defendants move to strike plaintiff's Notice on the grounds that, under the Federal Rules of Civil Procedure, a plaintiff cannot alter allegations in a complaint without actually filing an amended pleading and that her approach in this case improperly denies defendants the additional response time to which they are entitled. Mtn. to Strike at 1–2. By her own admission, plaintiff, through her notice, wishes to "add" statements to the Complaint in a manner that will alter the plain meaning of the allegations in this case. P's Notice at 2–3. The relevant background, moreover, demonstrates that the purpose of plaintiff's Notice is not to make a "minor correction" to a pleading—as plaintiff suggests, Mtn. to Strike Opp. at 3–4—but instead is to substantively alter the Complaint in an attempt to resolve an apparent impropriety raised by the GTC's sanctions motion. *See supra* Section II. Indeed, as plaintiff herself has argued, "the Notice of Correction . . . completely disposed of the [sanctions] issue." GTC Sanctions Opp. at 6.

Amendments to pleadings are controlled by Rule 15 of the Federal Rules of Civil Procedure, which permits a party to "amend its pleading once as a matter of course," and limits

---

[5] This case was transferred to this district judge a little more than one month prior to this date. Reassignment of Civil Case, May 5, 2011 [61].

9

additional amendments to circumstances where the party obtains either the opposition's written consent or leave from the court. Fed. R. Civ. P. 15(a)(1)–(2). Pursuant to Rule 15, submitting an amended complaint or answer automatically grants the opposing party 14 days to respond. *Id.* at 15(a)(3). Rather than file an amended pleading, however, plaintiff files an errata notice on the Court's docket. Errata are typically used by parties to correct typographical errors, *Footbridge Ltd. Trust v. Zhang*, 584 F. Supp. 2d 150, 157 n.7 (D.D.C. 2008), or to add exhibits to a motion, *Willis v. DOJ*, 581 F. Supp. 2d 57, 64 n.7 (D.D.C. 2008)—not to substantively alter the document forming the basis of an entire suit. Were courts to permit substantive changes to pleadings though such procedures, a party could undercut Rule 15's "one amendment" rule (absent consent or leave), while simultaneously denying the opposition a fair opportunity to respond to the amended pleadings. Such an approach is in direct contravention of the clear intent of Rule 15, and the Court therefore holds that plaintiff's Notice does not have the effect of adding the proposed allegations to the Complaint.

Rule 12(f) permits the Court to strike any redundant, immaterial, impertinent, or scandalous pleading to avoid wasting time or effort on spurious or improperly presented matter by everyone involved. Fed. R. Civ. P. 12(f); *Unique Indus. v. 965207 Alta. Ltd.*, 722 F. Supp. 2d 1, 5 (D.D.C. 2009). The decision to grant or deny a motion to strike is vested in the Court's discretion. *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 189 (D.D.C. 2005). Plaintiff attempts to circumvent the clear rules of procedure by amending her Complaint through an errata styled as a "Notice of Corerection." Such an approach, however, is in clear violation of Rule 15. As a result, plaintiff's Notice cannot have a substantive effect on the allegations in the Complaint, and thus the Court holds that this filing constitutes an immaterial pleading and should be stricken.[6]

---

[6] Plaintiff's counsel protests that defendants' motion to strike is novel, noting that he "has been unable to find (on Westlaw) any precedent of any [such] motion." Mtn. to Strike Opp. at 3. Setting aside the immateriality of

Aside from the merits of the motion to strike, plaintiff maintains that defendants failed to comply with Local Civil Rule 7(m), which requires parties to hold a conference and attempt to resolve any issues before filing a non-dispositive motion. Mtn. to Strike Opp. at 1–3. The record, however, reflects that following the filing of plaintiff's Notice on a Friday, defendants made several attempts to contact plaintiff the following Monday before filing their motion. Mtn. to Strike at 1. There is thus no evidence that defendants' motion was filed in bad faith. And though the parties may not have followed Rule 7(m) to the letter, plaintiff cannot demonstrate prejudice—she contests the entirety of defendants' motion and has not subsequently amended her complaint. In these circumstances, the Court will not engender further delay by forcing the parties to needlessly submit an additional round of briefing on a matter already before the Court. *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003).

### B. Service of Process

The Federal Rules provide both that an individual "may be served at a place not within any judicial district of the United States by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention," Fed. R. Civ. P. 4(f)(1), and that a corporation "at a place not within any judicial district of the United States" may be served "in any manner prescribed by Rule 4(f) for serving an individual." *Id.* at 4(h)(2). Thus, to serve defendants in this case, plaintiff must adhere to procedures set forth in the Hague Convention. *See FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1323 n.136 (D.C. Cir. 1980) ("The Hague Convention . . . establishes standard procedures for service of judicial and extrajudicial documents in the territory of one contracting nation in aid of private commercial or civil litigation taking place in another contracting nation.").

---

this point, counsel fails to consider that the novelty of a motion to strike a notice of correction is likely a direct result of the novelty of attempting to amend a complaint through submission of an errata titled "notice of correction."

In her first attempt to serve the Bahamian defendants,[7] plaintiff engaged a process server located in the Bahamas who delivered papers to GTC, CBL and Mr. Roberts and whose affidavit of service was witnessed by a judicial officer. *See* Return of Service/Affidavit, Sep. 14, 2010 [8]; Return of Service/Affidavit, Sep. 14, 2010 [9]; Return of Service/Affidavit, Sep. 14, 2010 [10]. Article 10 of the Hague Convention states that, "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention art. 10(c), *available at* http://www.hcch.net/index _en.php?act=conventions. text&cid=17. Where a signatory to the Hague Convention objects to service under Article 10, local methods of service are unavailable to the parties. *Doe v. State of Israel*, 400 F. Supp. 2d 86, 103–04 (D.D.C. 2005). The Bahamas, however, does not object to Article 10. *See* Hague Convention, Bahamas – Central Authority & practical information, *available at* http://www .hcch.net/index_en.php?act =authorities.details&aid=282 (registering "No Opposition" to Article 10(c) of Hague Convention). The process chosen by plaintiff to initially serve defendants therefore may have been consistent with the Hague Convention.[8] However, all three Bahamian defendants subsequently object to service on the ground that the documents they received included only the Complaint and no Summons. *See supra* Section II. Plaintiff responds by urging the Court to accept the sworn statements of the process server, potentially leaving the Court in the difficult position of resolving this factual dispute on the basis of competing affidavits regarding the contents of the packages that defendants received. Thankfully the Court

---

[7] Because defendant CB does not object to service in this action, the subsequent discussion only relates to service upon defendants GTC, CBL and Mr. Roberts.

[8] An open question remains as to whether the process server used by plaintiff qualifies as a "competent person" to effect service under Article 10(c) of the Hague Convention. However, in light of both the dispute as to the documents actually served on defendants and the fact that service was subsequently completed through the Central Authority, the Court need not resolve this question here.

12

need not resolve this dispute in light of plaintiff's request for a stay and subsequent endeavors to complete service in another manner.

In addition to Article 10 service, the Hague Convention provides that any signatory shall "designate a Central Authority which will undertake to receive requests for service," and that, *inter alia*, that Central Authority "shall itself serve the document or shall arrange to have it served by an appropriate agency." Hague Convention arts. 2 & 5, *available at* http://www.hcch.net/index_en.php?act=conventions .text&cid=17. In other words, "[e]ach signatory has established a nerve center, which receives the papers and then effects service on the named party unless such service would offend the nation's sovereignty or security." *State of Israel*, 400 F. Supp. 2d at 102. As a party to the Hague Convention, the Bahamas has designated its Office of the Attorney General as its Central Authority under the Hague Convention. *See* Hague Convention, Bahamas – Central Authority & practical information, *available at* http://www.hcch.net/index_en.php?act= authorities.details&aid=282 (declaring "Office of the Attorney General" as Central Authority under Article 5 of Hague Convention).

Shortly after defendants raised objections to service under Article 10(c) of the Hague Convention, plaintiff engaged the Bahamas' Central Authority in an attempt to effect service under Article 5 of the Convention. The record indicates that the Bahamas Office of the Attorney General served all three defendants with both the Complaint and Summons in this action in early October. *See supra* Section II. However, two of the defendants—GTC and Mr. Roberts—submitted sworn statements to the Court that each received a Summons addressed to the other, rather than to the actual recipient. *Id*. In an attempt to resolve this dispute, plaintiff moved to compel the appearance of the primary affiant, Ms. Whitehead, to give testimony concerning her receipt of the Summons. OSC Mtn. The factual dispute, however, was later obviated by

additional service—again through the Central Authority—in which both GTC and Mr. Roberts received a copy of the Complaint and a Summons correctly identifying the recipient. And though GTC again protests that the Complaint it received is improper because it does not incorporate the changes made by plaintiff's Notice—and thus service remains defective—the Court's decision to strike plaintiff's Notice nullifies GTC's objection. The Court therefore holds that all four defendants have been properly served in this action as of January 20, 2011.[9]

### C. Rule 11 Motions for Sanctions

"In order to find a violation of Rule 11, the district judge must conclude that, to the best of counsel's knowledge, information and belief formed after reasonable inquiry, the pleading was neither 'well grounded in fact' nor 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,' or that the pleading was 'interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Saltany v. Bush*, 960 F.2d 1060, 1061 (D.C. Cir. 1992). In evaluating a motion for sanctions, "[t]he court applies 'an objective standard of reasonable inquiry on represented parties who sign papers or pleadings.'" *Green v. AFL-CIO*, 657 F. Supp. 2d 161,

---

[9] Nor does the several-month gap between the filing of the Complaint and the completion of service alter this conclusion. While Rule 4 states that a defendant must be served "within 120 days after the complaint is filed," it also explicitly provides that this time limit "does not apply to service in a foreign country under Rule 4(f)." Fed. R. Civ. P. 4(m). Rather than limiting service of process in a foreign jurisdiction by any strict time period, *Nikbin v. Islamic Republic of Iran*, 517 F. Supp. 2d 416, 430 (D.D.C. 2007), courts "apply a 'flexible due diligence' standard for determining whether service of process on a foreign defendant was timely." *Overseas Partners v. Progen Musavirlik ve Yonetim Hizmetleri*, 15 F. Supp. 2d 47, 49 (D.D.C. 1998). Here, the record establishes that plaintiff first served defendants under Article 10 of the Hague Convention less than a month after the Complaint was filed in this action. And after subsequently learning that this initial service may have been incomplete, plaintiff immediately endeavored to complete service under Article 5, which was effected little more than a month after defendants first objected to service. After defendants GTC and Mr. Roberts raised additional objections to service on the ground that they received incorrectly addressed Summons—with no evidence that plaintiff was responsible for this error—plaintiff quickly proceeded to serve these two defendants yet again, and completed this service by January. Under these circumstances, the Court can reach no conclusion other than that plaintiff acted diligently to effect proper service in this case, and thus holds that service was timely. *See Melara v. China N. Indus. Corp.*, 658 F. Supp. 2d 178, 180 (D.D.C. 2009) (allowing four years for plaintiff to complete service "because Rule 4(m) does not apply to service in a foreign country" and service "failed for reasons ranging from failing to pay proper fees to using the wrong name for the defendant"). In addition, because service in this matter is now complete, plaintiff's requests for additional time to complete service and to take Ms. Whitehead's testimony have been rendered moot, and thus the Court will deny both plaintiff's cross-motions and her request for an order to show cause.

166 (D.D.C. 2009) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 554 (1991)).  Rule 11 also includes a safe-harbor provision, which requires that the party seeking sanctions serve its intended motion upon the other side 21 days prior to filing that motion so that the opposition has an opportunity to "withdraw[] or appropriately correct[]" the inaccuracies at issue.  Fed. R. Civ. P. 11(c)(2).

Defendants have filed two separate motions for sanctions.  First, GTC moves the Court to sanction plaintiff and her counsel for alleging that plaintiff's mother identified defendant CBL in their July 2006 conversation, arguing that this allegation is in conflict with a sworn statement submitted in separate proceedings in Kansas in which plaintiff declared that her mother did not identify any particular bank during the relevant conversation.  GTC Sanctions Mtn. at 2–3.  Second, defendants CBL and Mr. Roberts request sanctions based on the conflict between various statements in the Complaint implying that plaintiff is acting as the overseer of her mother's estate and the records of Ms. Foelgner's estate proceedings in Kansas demonstrating that plaintiff is not the appointed trustee or administrator.  CBL/Roberts Sanctions Mtn. at 5–7.  The Court discusses each of these motions in turn.

### 1. GTC's Rule 11 Motion for Sanctions

The Complaint alleges that plaintiff's mother specifically identified defendant CBL several times during the conversation between her and plaintiff in July 2006 as the bank at which the purported account was opened in the Bahamas.  *See* Complaint at ¶ 17 ("Foelgner orally repeatedly named that bank, CORNER BANK, saying that at least $14 million had accumulated on that Account at that bank.").  At the same time, in a notarized affidavit submitted to the District Court of Reno County in Kansas over three years ago, plaintiff states that in this specific conversation her mother "did not tell [her] at that time the bank's specific name," and that, as of

15

April 2008, she "ha[d] not . . . discovered and d[id] not know the name of the bank where the Account is located." Ex. 2 to GTC Sanctions Mtn., Oct. 4, 2010 [27-2]. Based on these apparent inconsistencies, GTC argues that plaintiff has committed perjury by signing the verified Complaint while her counsel failed to comply with his duty under Rule 11 to investigate the veracity of plaintiff's allegations. GTC Sanctions Mtn. at 3–4.

Plaintiff offers a number of responses to GTC's motion, including the fact that she filed plaintiff's Notice in an attempt to rectify what might otherwise be inconsistent statements. GTC Sanctions Opp. at 3–5. Until today, plaintiff had no basis to believe that her notice did not effectively resolve the apparent inconsistency raised by GTC. When evaluating a Rule 11 motion for sanctions, the standard to which counsel is held is one of reasonableness. *Bender v. Jordan*, 679 F. Supp. 2d 85, 87 (D.D.C. 2010). In this case, plaintiff responded to service of the intended sanctions motion by attempting to amend her complaint to correct for the alleged misstatement,[10] and the Court's conclusion that the method plaintiff employed was ultimately ineffective does not undermine the fact that she acted to resolve the dispute. The Court thus cannot conclude that actions taken by counsel were so unreasonable or in bad-faith as to warrant the imposition of sanctions.[11] *See Long v. DOJ*, 207 F.R.D. 4, 6–7 (D.D.C. 2002) (declining to

---

[10] Plaintiff also argues, yet again, that GTC's motion should be disregarded for failure to comply with Local Rule 7(m). Here, however, the parties agree that such a conference did take place, and plaintiff's objection is based on her belief that a second conference should have been held after plaintiff's Notice was filed. GTC Sanctions Opp. at 1–3. This position is untenable. At the conference in question GTC's counsel informed plaintiff's counsel that it believed that plaintiff's Notice was insufficient to cure the alleged conflict in the Complaint. Because Rule 11 permits a party to file a motion if the challenged pleading is not appropriately withdrawn or corrected, Fed. R. Civ. P. 11(c)(2), defendant's determination—expressed at the Rule 7(m) conference—that plaintiff had not complied with Rule 11's safe-harbor provision is sufficient to satisfy the local rules.

[11] GTC also requests sanctions pursuant to 28 U.S.C. § 1927, which provides that "an attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally" the costs and fees resulting from such conduct. 28 U.S.C. § 1927. While GTC may be correct that sanctions under § 1927 do not require bad faith, GTC Sanctions Mtn. at 4, such sanctions do require a finding that the attorney's conduct rises to "*at least* reckless[ness]." *United States v. Wallace*, 964 F.2d 1214, 1217 (D.C. Cir. 1992) (emphasis in original). There is no evidence demonstrating that plaintiff's counsel was aware of, and yet acted indifferently to, the potential conflict; instead, counsel attempted to correct the alleged misstatement by entering an *errata* on the docket. The Court will therefore deny GTC's § 1927 motion.

16

institute sanctions where party attempted to file supplemental motion rather than withdrawing motion in which misrepresentations were made). However, because the Court has now stricken plaintiff's Notice, this opinion again raises the possibility that the operative complaint contains allegations which are false or in conflict with documents submitted to another tribunal in a separate proceeding.[12] Accordingly, the Court shall deny GTC's motion without prejudice and subject to renewal if plaintiff fails to rectify the alleged inconsistencies.

### 2. CBL's and Roberts' Rule 11 Motion for Sanctions

In their motion for sanctions, CBL and Mr. Roberts argue that plaintiff lied, and her counsel failed to investigate, when making allegations that plaintiff is the administrator or trustee for her mother. CBL/Roberts Sanctions Mtn. at 5–6. In support of this position, defendants submit records from the probate proceedings in Kansas following Ms. Foelgner's death, in which plaintiff was not appointed administrator of the estate. Ex. 2 to CBL/Roberts Sanctions Mtn., Oct. 7, 2010 [28-2]. Plaintiff retorts that defendants misconstrue the Complaint, and that she has only alleged that she is the trustee for, beneficiary of, the bank account at the center of this action. CBL/Roberts Sanctions Opp. at 4–6. As is often the case, the truth is somewhere in the middle. On the one hand, several allegations imply broader powers than those generally held by a mere administrator or "joint-tenant" of a single bank account. *See, e.g.*, Complaint at Caption (listing plaintiff as "trustee and administrator for Lavera Jean Foelgner"); *id.* at ¶ 7 ("In her capacity as trustee for her deceased mother FOELGNER, . . ."). On the other hand, most of the allegations explicitly tie any such powers to the account in question. *See, e.g., id.* at ¶ 2 ("Plaintiff . . . is also a trustee and an administrator for the certain account's assets."); *id.* at ¶ 13 ("FOELGNER and DAY were the holders or alternatively beneficiaries of that account."); *id.* at

---

[12] The Court emphasizes that it does not reach the question of whether an actual conflict between plaintiff's allegations and her prior statements under oath exists, but merely concludes that the initial reaction to the service of GTC's intended motion by plaintiff was sufficient to implicate Rule 11's safe-harbor provision.

¶ 17 ("[T]he Account was in joint names of FOELGNER and DAY, or alternatively, it was a trust Account with two beneficiaries.").[13]

"The Federal Rules establish a regime in which 'simplified' pleadings provide notice of the nature of claims, allowing parties later 'to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.'" *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 421–22 (D.C. Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Complaint undoubtedly accomplishes this task. Neither Rule 8 nor Rule 11 require a plaintiff to choose the precise legal term to adequately describe the relationship between her, her mother and the account—particularly where the Complaint alleges that she was never given any paperwork regarding that account. Instead, the use of imperfect legal terminology is permissible at this stage of the litigation, before discovery has permitted the parties to clarify and focus the dispute. *Hilska v. Jones*, 217 F.R.D. 16, 20–21 (D.D.C. 2003). Thus, because plaintiff's pleading—while vague—is in compliance with Rule 8's notice requirements, the Court does not find any facts warranting imposition of sanctions pursuant to Rule 11.

### D. The Proceedings Ahead

The remaining issues are those raised by defendants' motions to dismiss and include objections to jurisdiction, arguments concerning the doctrine of *forum non conveniens*, and several grounds for dismissal under Rule 12(b)(6). Several factors, however, give the Court pause before evaluating these matters. First, because today's opinion strikes plaintiff's Notice, the Court expects that plaintiff will soon be filing an amended complaint that may alter some or all of the bases for defendants' motions. Second, in seeking a stay plaintiff reasonably anticipated that the Court would allow additional time to ensure effective service and—as a

---

[13] In addition, defendants also protest that plaintiff frequently and inconsistently vacillates between alleging that she is a trustee, an administrator, or a beneficiary. CBL/Roberts Sanctions Reply at 4.

result—plaintiff did not submit complete responses to the alternative grounds for dismissal set forth in defendants' motions, but rather provided an "Outline" summarizing the general nature of her opposition. Given the difficulties that often attend service abroad and the mistakes that may have occurred but were certainly outside plaintiff's control, the Court finds that plaintiff's cross-motions were made in good faith and will not deny plaintiff an opportunity to fairly and fully address the grounds for dismissal set forth in defendants' motions. Finally, the Court recognizes that some of today's rulings may alter the substance of the parties' arguments concerning dismissal, and finds that both sides would benefit from an opportunity to review today's holdings before proceeding with further argument. The Court will thus deny without prejudice defendants' motions to dismiss pending the filing of an amended complaint, at which time defendants may re-file their motions to address the allegations raised in the new pleading. Before concluding, however, the Court pauses to emphasize that today's opinion does not reach the merits of any arguments concerning jurisdiction, *forum non conveniens*, or Rule 12(b)(6) that were previously briefed by the parties, and expressly warns that no litigant should view today's opinion as indicating any view as to the likely resolution of the remaining disputes.

**IV.    CONCLUSION**

The Court anticipates that the conclusions reached today are unlikely to fully satisfy either side in what has become a heated dispute. However, the complicated procedural posture of this case, combined with the numerous outstanding motions, require clarification and proper briefing before the Court may proceed. That said, though an amended complaint will be filed, the Court expects that the central issues in this matter are unlikely to drastically change, and is aware that the parties will have already researched and—in large part—written on these matters. The Court also recognizes, from the increasing intensity of the papers filed before it, that all

parties seek prompt resolution of the remaining issues. For these reasons, the Court will adopt an expedited briefing schedule, as set forth in the Order accompanying this opinion, and will endeavor to resolve the remaining matters within a reasonable period of time.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on June 10, 2011.