# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TONYA KAY DAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-cv-1339 (RCL) |
| | ) | |
| THE CORNÈR BANK (OVERSEAS) LIMITED, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

Fourteen million dollars can make people do crazy things. According to plaintiff Tonya Kay Day, $14 million motivated a Swiss bank and its Bahamian subsidiary to bury any evidence of a bank account opened by a Kansas woman and her oil-baron lover in the 1970s, triggered a vitriolic assault against Ms. Day by the banks' manager in response to her attempts to uncover the truth, led the largest law firm in the Bahamas to engage in a duplicitous scheme to dupe Ms. Day into revealing personal confidences, and launched a public smear campaign in the Bahamian media. Or $14 million might drive someone to invent such a story. Ms. Day may be a helpless victim tilting against powerful and shadowy international banking forces, or, as a Las Vegas resident, may be simply drawing blind, hoping to come up Aces. It's sometimes difficult to say. But in either case, a federal district court located in the District of Columbia has no role to play in a dispute pitting a Nevada citizen against a Swiss bank and its Bahamas-based subsidiary, manager and law firm, where the prize is $14 million that once purportedly belonged to a Kansas woman. For this simple reason, the Court will dismiss this case.

## II.     PROCEDURAL HISTORY

The lengthy and somewhat-complicated factual and procedural history of this case is set forth more completely in this Court's prior opinion. *See generally Day v. Cornèr Bank (Overseas) Ltd.*, --- F. Supp. 2d ----, ----, No. 10 Civ. 1339, 2011 U.S. Dist. LEXIS 62386, at *3–*15 (D.D.C. June 10, 2011). The short version follows.

Plaintiff alleges that her mother Lavera Jean Foelgner and her mother's former lover, Dominick Joseph Iannitti, opened a bank account in Ms. Foelgner's name at Cornèr Bank (Overseas) Limited ("CBL") in the 1970s, placing approximately $14 million in that account. Amended Complaint ¶¶ 14–23, June 17, 2011 [65] ("AC").[1] Just before her sudden death in 2006, Ms. Foelgner disclosed the existence of the account to her daughter, providing the account number and sufficient information to lead plaintiff to CBL. *Id.* at ¶¶ 29–40. After subsequent conversations with Colyn Roberts—CBL's manager—proved fruitless, *id.* at ¶¶ 41–42, Ms. Day hired an attorney in Utah, who in turn retained Graham, Thompson & Co. ("GTC"), a Bahamian law firm, to represent Ms. Day in her inquiries with CBL. *Id.* ¶ 43. GTC later withdrew, however, citing a conflict between its representation of Ms. Day and its representation of CBL in an unrelated matter. *Id.* ¶¶ 44–45. Frustrated with the lack of progress, plaintiff traveled to the Bahamas, where she claims that while attempting to enter CBL's offices, Mr. Roberts blocked her entrance and pushed her out the door. *Id.* ¶¶ 47–51. Plaintiff's later attempts to contact either CBL or Cornèr Banca S.A. ("CB"), its Swiss parent, went unanswered. *Id.* ¶¶ 54–55.

Based on these allegations, plaintiff filed suit against CBL, CB, Mr. Roberts and GTC in this Court last August. Over the next several months, the parties populated the Court's docket

---

[1] Plaintiff alleges that the funds for this account were drawn from profits made by Mr. Iannitti, who operated an oil company for more than 20 years. AC ¶ 24.

2

with numerous motions concerning the adequacy of service of process, the propriety of plaintiff's allegations, and the necessity of receiving certain testimony, among other matters. The Court previously addressed these matters, concluding that (1) plaintiff properly served each defendant in this action, (2) plaintiff followed incorrect procedures for amending her complaint, and therefore such amendments should be stricken, and (3) plaintiff's attempt to alter her allegations, while faulty, constituted invocation of Rule 11's safe harbor rule. *Day*, --- F. Supp. 2d at ----, 2011 U.S. Dist. LEXIS 62386 at *16–*34. The Court then directed plaintiff to amend her complaint consistent with Federal Rule of Civil Procedure 15, and set a schedule for briefing on defendants' remaining grounds for dismissal. Order, June 10, 2011 [63]. Plaintiff complied, filing an amended complaint that reasserted numerous claims against defendants,[2] but also goes beyond the original pleadings by adding allegations that GTC and CBL have engaged in a smear campaign in the Bahamian media to "reflect[] their positions and put[] DAY into a false light." AC ¶ 59. Based on these new allegations, plaintiff adds a claim for Invasion of Privacy (Count XII) against both defendants. *Id*. at ¶¶ 110–114.

Defendants subsequently moved to dismiss the Amended Complaint, arguing that the Court lacks personal jurisdiction over any of the defendants, that the District of Columbia is an improper forum under the doctrine of *forum non conveniens*, and that plaintiff fails to state any claim for relief under Rule 12(b)(6). Motion to Dismiss Amended Complaint, June 27, 2011 [66] ("GTC Mtn."); Motion to Dismiss Amended Complaint, June 28, 2011 [68] ("Bank Mtn.").[3] Because plaintiff's invasion of privacy allegations involve events occurring after this suit was

---

[2] The Amended Complaint alleges Breach of Contract and Breach of Fiduciary Duty against all defendants (Counts I–II), Conversion and Unjust Enrichment against CB and CBL (Counts III–IV), Civil Conspiracy against all defendants (Count VII), Battery against Mr. Roberts, CB and CBL (Count VIII), Intentional Infliction of Emotional Distress against Mr. Roberts (Count IX), and Malpractice and Misrepresentation or Fraud against GTC (Counts X–XI), while seeking a Declaratory Judgment and an Accounting (Counts V & VI). AC ¶¶ 60–109.

[3] This latter motion is submitted jointly on behalf of CB, CBL and Mr. Roberts, and will therefore be referred to as the banks' motion to dismiss.

3

initiated, defendants also moved to strike these allegations as improperly filed without leave of court, as required under Rule 15(d). GTC Mtn. at 21–22; Bank Mtn. at 23–25. In response, plaintiff cross-moved to supplement her pleadings. Cross-Motion to Supplement Pleading, July 7, 2011 [69]. Having reviewed the record and the parties' briefs, the Court finds any connection between defendants and the District utterly lacking, and thus dismisses plaintiff's suit for want of jurisdiction.[4]

## III. STANDARD

On a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant. *FC Inv. Grp. LC v. IMX Mkts., Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008). To meet this burden, a plaintiff must allege "specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations." *Moore v. Motz*, 437 F. Supp. 2d 88, 90–91 (D.D.C. 2006). And unlike a motion to dismiss for failure to state a claim, the Court need not confine itself to only the allegations in the complaint, but "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Nor must a court treat as true all of plaintiff's allegations when determining whether personal jurisdiction exists. *Fuentes-Fernandez & Co. v. Caballero & Castellanos, PL*, 770 F. Supp. 2d 277, 279 (D.D.C. 2011). At the same time, any factual discrepancies with regard to the evidence itself must be resolved in favor of the plaintiff, *Dean v. Walker*, 756 F. Supp. 2d 100, 102 (D.D.C. 2010), and in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing that the Court has personal jurisdiction. *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).

---

[4] In light of the Court's determination that the nonexistence of any connection between defendants and this forum warrants dismissal, the Court does not address the remaining grounds for dismissal set forth by defendants. In addition, plaintiff's cross-motion to supplement her pleadings will be denied as moot.

## IV. ANALYSIS

This case involves a Nevada resident, AC ¶ 1, who hired a Utah-based law firm, *id.* at ¶ 43, to track down information about an account in the Bahamas allegedly opened by her mother, *id.* at ¶ 20, a Kansas resident. *Id.* at ¶ 2. She is suing a Bahamian bank, *id.* at ¶ 3—at which the account is purportedly located, *id.* at ¶ 20—the bank's Swiss parent, *id.* at ¶ 3, its Bahamian manager, *id.* at ¶ 5, and a law firm that previously represented her and is also located in the Bahamas. *Id.* at ¶ 6. The question for the Court is whether these defendants can be hauled into the District in a manner consistent with DC law and due process. For the reasons set forth below, the Court finds that they cannot.[5]

### A. General Jurisdiction

Under D.C. law, courts may exercise personal jurisdiction over a foreign corporation for any purposes where that corporation is "doing business" in the District. D.C. Code. § 13-334(a). This statutory language tracks the Supreme Court's articulation of general jurisdiction, which permits a court to exercise jurisdiction over a defendant who has "continuous and systematic" contacts with the forum, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), and "[t]he D.C. Court of Appeals has indicated that the reach of doing business jurisdiction under § 13-334(a) is co-extensive with the reach of constitutional due process." *FC Inv. Grp.*, 529 F.3d at 1092 (quotations omitted).

None of the defendants have any connection to the District in a manner that establishes the "continuing corporate presence" required by due process. *Nikbin v. Islamic Republic of Iran*,

---

[5] The only instance in which Washington, D.C. is mentioned in the Amended Complaint is the first paragraph, in which plaintiff alleges that she "has trust arrangements in Washington, D.C." AC ¶ 1. This represents the entirety of plaintiff's statement, and plaintiff otherwise fails entirely to articulate any facts as to how these purported trust arrangements are related to this dispute. Faced with a dearth of explanation or analysis, the Court will not rely on this isolated statement. *See Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006) ("[T]he court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions.")

5

471 F. Supp. 2d 53, 72 (D.D.C. 2007) (citing *Helicopteros*, 466 U.S. at 418). Neither CB, CBL nor GTC have any offices or employees in the District, none of the defendants are registered to do business in the District or elsewhere in the United States, and they do not have any assets or other property in the District,[6] GTC Mtn. at 2–3; Bank Mtn. at 8—nor does plaintiff allege otherwise. Instead, plaintiff sets forth three alternative bases for the assertion of jurisdiction over these defendants, each of which is legally insufficient.

As to GTC, plaintiff alleges that the firm has "admitted to hav[ing] U.S. clients," AC ¶ 6, and argues that "as long as GTC has clients in the U.S., this would suffice." Opp. to Motion to Dismiss the Amended Complaint, July 7, 2011 [71]. In response, GTC submits evidence that (1) it "has never been authorized to do business in the District," (2) none of the firm's attorneys are admitted to the DC Bar, (3) GTC does not recruit employees or solicit customers in the District, and (4) that, for any DC-based clients it may have had, the firm only did work related to legal issues in the Bahamas. Declaration of Judith A. Whitehead ¶¶ 5–9, Ex. 1 to GTC Mtn., June 27, 2011 [66-2] ("Whitehead Decl."). Plaintiff does not challenge these assertions, and the Court therefore finds that the limited interaction, if any, between GTC and DC-based clients is insufficient to subject the firm to general jurisdiction in the District. *See FC Inv. Grp.*, 529 F.3d at 1093 ("[L]imited contact with a District customer—unrelated to the plaintiffs or their claims—does not support the district court's exercise of general jurisdiction.").

With respect to the banks, plaintiff argues that the existence of U.S.-based correspondent accounts in the banks' names subjects them to jurisdiction in this forum. Opposition to Motion to Dismiss Amended Complaint 5–6, July 7, 2011 [70] ("P's Opp. to Bank Mtn."). Because foreign banks generally cannot maintain branch offices in the United States, they maintain

---

[6] As for Mr. Roberts, plaintiff does not make a single allegation concerning his presence in the United States, and the Court therefore finds that it does not possess general jurisdiction over him.

accounts as U.S. banks—known as correspondent accounts—to effect dollar transactions and facilitate fund transfers. Plaintiff does not specify any location for the banks' correspondent accounts, but does indicate that they are "presumably in New York." AC ¶ 10. And the little evidence available is consistent with plaintiff's guess. Certification Regarding Correspondent Accounts 2, Ex. A to P's Opp. to Bank Mtn., July 7, 2011 [70-4] (designating agent for service of process in New York State). The Court, however, is at a loss as to how the existence of bank accounts in *New York* can possibly establish the banks' presence in *the District of Columbia*. Nor does the maintenance of an agent for service of process alleviate this concern—not only is the agent also in New York, *id.*, but the relevant legal provision requires only that an agent be designated to receive service from either the Secretary of the Treasury or the Attorney General of the United States, 31 U.S.C. § 5318(k)(3), and does not apply to private causes of action. *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 327 (D. Conn. 2008). Finally, even if the banks did maintain correspondent accounts in the District, the mere presence of such accounts—without more—is an insufficient basis for the assertion of general jurisdiction. *See Licci v. Am. Express Bank Ltd.*, 704 F. Supp. 2d 403, 407 (S.D.N.Y. 2010) ("The mere maintenance of correspondent bank accounts with a financial institution . . . is not, standing alone, a sufficient basis to subject a foreign defendant to personal jurisdiction.") (collecting cases).[7]

Finally, plaintiff alleges that CB "has engaged in substantial business in the U.S., including being the first Swiss banking group that introduced VISA and subsequently MasterCard credit cards' services to its clients," AC ¶ 9, and argues that CB "must have entered

---

[7] At least one court has used the existence of correspondent accounts to establish jurisdiction. *See Ballard v. Savage*, 65 F.3d 1495, 1498–99 (9th Cir. 1995). But that case is easily distinguished. As an initial matter, the accounts were only one of several relevant factors in *Ballard*; others included the presence of more than 60% of the banks' customers in the United States and the solicitation of business in California. *Id*. at 1498. Moreover, the Ninth Circuit exercised *specific* jurisdiction in *Ballard*, as the correspondent accounts were allegedly used to house funds for the Ponzi scheme constituting the heart of the underlying action. *Id*. at 1500. Here, there is no relationship between the banks' correspondent accounts and Ms. Day's allegations.

7

in franchise and processing agreements in the U.S." P's Opp. to Bank Mtn. at 7. As an initial matter, the contracts permit CB to distribute credit cards for VISA and MasterCard *in Switzerland*, *id.*, and it is difficult to understand how an agreement to distribute products in a foreign country could render CB present in this forum. Moreover, the contracts in the record show that the relevant agreements are between CB and Visa Europe Limited—a London-based entity—on the one hand, and CB and MasterCard Europe, sprl—a Belgian limited liability company—on the other. Exs. A & B to Reply in Support of Motion to Dismiss Complaint, Dec. 20, 2010 [52-1]. This Court cannot assert jurisdiction over a Swiss bank in reliance on contracts entered into between the bank and other foreign companies.[8] The Court therefore concludes that none of the defendants have sufficient connections to the District to permit the exercise of jurisdiction over them generally.

### B. Specific Jurisdiction

#### 1. Due Process and D.C.'s Long-Arm Statute

Turning to specific jurisdiction, a plaintiff seeking to haul a non-resident defendant into a forum must demonstrate that the court's exercise of jurisdiction comports with both the forum's long-arm statute and due process. *FC Inv. Grp.*, 529 F.3d at 1094–95. Because this case is before the Court based on diversity jurisdiction, AC ¶ 7, the Court looks to DC's long-arm statute. *Dean*, 756 F. Supp. 2d at 103. That statute permits the exercise of jurisdiction over a foreign corporation for tortious injury where the claims for relief arise "from that person's (1) transacting any business in the District . . . (2) contracting to supply services in the District . . . (3) causing tortious injury in the District by an act or omission in the District . . . [or] (4) causing tortious injury in the District by an act or omission outside the District if he regularly does or

---

[8] And even if plaintiff's allegations were accurate, VISA is located in San Francisco, while MasterCard is headquartered in New York; therefore neither contract could create a connection sufficient to support general jurisdiction in Washington, D.C.

solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District." D.C. Code § 13-423(a). Because plaintiff alleges neither a contractual relationship concerning this forum nor an act in the District, only subsections (a)(1) and (a)(4) are potentially applicable in this case.

D.C. Code § 13-423(a)(1) has been given an "expansive interpretation" that renders it "co-extensive with the due process clause"; accordingly, the Court must insure "whether the defendant 'has purposefully availed itself of the benefits and protections of the District in engaging a business actually in the forum jurisdiction,' and protections of the District in engaging in a business actively in the forum jurisdiction," and whether "it is fair and reasonable to expect it to anticipate being sued in that jurisdiction." *I Mark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 154 (D.D.C. 2010) (citing *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (en banc)). As to CB, CBL and Mr. Roberts, plaintiff alleges only that CBL opened an account for her mother—a Kansas citizen—and that she—a Nevada citizen—now possesses the rights to that account, and says nothing establishing that the banks are "transacting business" in the District. And to the extent plaintiff's brief reference to "trust arrangements" in the District attempts to tie the alleged account at CBL to some legal instrument in this forum, the conclusory allegations in the Amended Complaint—and any intimation that might be drawn from them—are insufficient to make a prima facie showing of jurisdiction. *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).[9] Turning to GTC, the unrebutted evidence establishes that the firm does not actively conduct or solicit business in the District, Whitehead Decl. ¶ 8, and any undertakings in the United States generally

---

[9] Nor can plaintiff rely on either the allegations concerning CBL's maintenance of correspondent accounts or CB's contractual relationships with VISA and MasterCard to establish specific jurisdiction over these defendants, as the causes of action in this case do not arise out of those transactions, as required by the statute and due process. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510 n.2 (D.C. Cir. 2002).

9

are insufficient absent accompanying allegations or evidence demonstrating that such efforts are specifically aimed at the District. *Lans v. Adduci Mastriani & Schaumberg LLP*, No. 02 Civ. 2165, 2011 U.S. Dist. LEXIS 54463, at *84–*86 (D.D.C. May 23, 2011). It is also well-established that "an attorney-client relationship does not subject a non-resident attorney or law firm to personal jurisdiction in its client's home forum where legal services were rendered outside of the client's home forum." *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 8–9 n.5 (D.D.C. 2009) (collecting cases). In this instance, GTC was hired by plaintiff to contact a Bahamian bank and press for information on an account allegedly opened in the Bahamas. Nothing in this representation, however, could have indicated to GTC that it might be amenable to suit in the District. Accordingly, the Court finds that none of the defendants are "transacting any business" in the District as required by § 13-423(a)(1).

Moving on to § 13-423(a)(4), while she has alleged certain acts by defendants outside the forum—such as CB's and CBL's purported theft of $14 million, Mr. Roberts' alleged physical altercation with Ms. Day, and GTC's claimed malpractice—plaintiff, as a resident of Nevada, fails entirely to explain how any of these acts caused any injury *in the District*, as required. *GTE New Media*, 199 F.3d at 1349. And even if plaintiff had not fatally omitted such allegations, the record falls woefully short of establishing "any of subsection (a)(4)'s so-called 'plus factors': regularly doing or soliciting business, engaging in any other persistent course of conduct, or deriving substantial revenue" in the District. *McIntosh v. Gilley*, 753 F. Supp. 2d 46, 59 (D.D.C. 2010). These factors "serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987). In light of defendants' minimal to non-existent connection to the District, this case is undoubtedly one for which subsection (a)(4)'s filter was designed.

Finally, "[u]nder the 'minimum contacts' standard [of due process], courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *GTE New Media*, 199 F.3d at 1347 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This "fair warning" requirement is satisfied if the defendant has purposefully directed his activities at the forum and the resulting injuries arise out of, or relate to, those activities. *Buesgens v. Brown*, 567 F. Supp. 2d 26, 35 (D.D.C. 2008) (citations omitted). Even taking the Amended Complaint as the truth in this matter, plaintiff has alleged *only* that (1) GTC fraudulently agreed to represent a Nevada resident at the request of a Utah-based attorney, (2) the banks stole $14 million from a Kansas resident and her daughter, and (3) Mr. Roberts assaulted a Nevada resident. Plaintiff provides no reasoning as to how these acts constitute conduct *purposefully directed* at the District, and the Court finds none elsewhere.[10] Accordingly, the Court finds that plaintiff has failed to allege facts or submit evidence sufficient for the exercise of personal jurisdiction over defendants in the District of Columbia under the DC long-arm statute or due process.

2.  **28 U.S.C. § 1391(d)**

Rather than to allege facts establishing *any* connection between the defendants and the District of Columbia, plaintiff places heavy emphasis on the federal venue statute, which in relevant part declares that "[a]n alien may be sued in any district." 28 U.S.C. § 1391(d). Plaintiff's reliance is misplaced. Section 1391 is a venue statute and "has nothing whatever to do with acquiring personal jurisdiction by service of process." *James Talcott, Inc. v. Allahabad*

---

[10] Nor can plaintiff's conspiracy allegations alter this result. "For 'conspiracy' jurisdiction under [the D.C. long-arm statute], the plaintiff must allege (1) the existence of a civil conspiracy, (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy." *FC Inv. Grp.*, 529 F.3d at 1096 (quotations omitted). Here, not only are plaintiff's allegations of conspiracy entirely conclusory, *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) ("The allegation that the [defendants] 'conspired together' . . . does not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction.") (quotations omitted), but plaintiff does not allege *any* overt act in the District, as required.

11

*Bank, Ltd.*, 444 F.2d 451, 464 (5th Cir. 1971). Indeed, as legal concepts, questions of personal jurisdiction and venue are distinct. The former concerns itself with the power of a court to adjudicate the rights and liabilities of a party, while the latter focuses on the most convenient location for litigation. Consequently, "the question of venue has no bearing on the question of personal jurisdiction." *Companhia Brasileira Carbureto de Calcio – CBCC v. Applied Indus. Materials Corp.*, 698 F. Supp. 2d 109, 120 (D.D.C. 2010). Consistent with this understanding, courts evaluating § 1391(d)—which deals with the proper venue for suits against foreign entities—uniformly find that this provision "is a venue statute and not a statute creating personal jurisdiction in federal courts." *Weinstein v. Norman M. Morris Corp.*, 432 F. Supp. 2d 337, 339 (E.D. Mich. 1997); *see Tatum v. Woods*, No. 04 Civ. 0748, 2007 U.S. Dist. LEXIS 61790, at *8–*9 (M.D. Tenn. Aug. 22, 2007) ("[S]ection 1391(d) is a venue provision and has no bearing on the question of personal jurisdiction.") (citing *Watkins v. Kajima Int'l Inc.*, No. 06 Civ. 197, 2007 U.S. Dist. LEXIS 19402, at *16 n.5 (M.D. Tenn. Mar. 16, 2007)); *eMag Solutions, LLC v. Toda Kogyo Corp.*, No. 02 Civ. 1611, 2006 U.S. Dist. LEXIS 94462, at *7 (N.D. Cal. Dec. 21, 2006) ("[Section] 1391(d) is a venue statute, not a statute authorizing personal jurisdiction."); *Nova Biomed. Corp. v. Moller*, No. 79 Civ. 1426, 1979 U.S. Dist. LEXIS 8336, at *2 n.1 (D. Mass. Nov. 27, 1979) (finding that venue is proper under § 1391(d) "*if* personal jurisdiction is established") (emphasis added).

None of the law cited by plaintiff requires a different result. At least one of the cases relied on by plaintiff—*Holt v. Rederi*—opines that while under § 1391(d) an alien may be sued in any district, "[n]onetheless, an alien is entitled to the same due process protection as any other person"—including, of course, due process limitations on the exercise of personal jurisdiction. 355 F. Supp. 354, 358 n.4 (W.D. Mich. 1973). Similarly, in another the court declares that

"questions to be decided" before evaluating venue under § 1391(d) include "whether the defendants can be constitutionally subjected to the jurisdiction of the Court." *Seilon, Inc. v. Dardanio Manuli S.p.A.*, 271 F. Supp. 516, 517 (N.D. Ohio 1967). And in yet another opinion cited by plaintiff, the court expressly recognizes that the "concepts of personal jurisdiction and of venue are closely related, but nonetheless distinct," *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 224 (D.N.J. 1966), and proceeds to analyze § 1391(d) and personal jurisdiction separately. *See generally id.* at 225–231. Indeed, this practice of discussing questions of personal jurisdiction and venue under § 1391(d) separately is consistent across the remaining cases cited by plaintiff.[11] Plaintiff's reliance on § 1391(d) thus provides no independent basis for the Court's exercise of personal jurisdiction over defendants.

## V. CONCLUSION

For the reasons set forth above, the Court holds that the allegations in the Amended Complaint and other evidence in record provides no basis for the exercise of personal jurisdiction over these defendants, as none are present in the forum, no injury was suffered in the District, and no reason to believe that defendants aimed their conduct at this jurisdiction exists.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 1, 2011.

---

[11] Specifically, in *Velcro Grp. Corp. v. Billarant*, the court first determined—without reference to § 1391(d)—that it could assert jurisdiction over the French defendant because it was "reasonably foreseeable" that the defendant, "in fraudulently procuring a patent to the direct detriment of [plaintiff], a New Hampshire corporation, would reasonably anticipate being sued in New Hampshire." 692 F. Supp. 1443, 1448 (D.N.H. 1988). Only after reaching this conclusion did the court turn to the question of venue under § 1391. *Id.* at 1449. Similarly, the court in *Brunswick Corp. v. Suzuki Motor Co., Ltd.*, first found that the sale of products through affiliates in Wisconsin was sufficient to satisfy due process requirements for personal jurisdiction, 575 F. Supp. 1412, 1422–23 (E.D. Wis. 1983), and then turned to § 1391(d) and the issue of venue. *Id.* at 1425 n.6. Finally, in *Chas. Pfizer & Co. v. Laboratori Pro-Ter Prodotii*, the court discussed venue under § 1391 as a distinct issue from personal jurisdiction, and the court only upheld the assertion of jurisdiction after finding that the defendant was doing business in the forum and had an agent in that forum for purposes of service of process. 278 F. Supp. 148, 153 (S.D.N.Y. 1967).